Case number 23-5049. Montesilver and Montesilver Limited, an 8-gray-leaf corporation, at Valence, which is United States of America. Mr. Zell, for the defense. Mr. Klimas, for the evidence. Mr. Zell, good morning. Good morning, Your Honors. May it please the Court, my name is Mark Zell. I'm here for the Valence Montesilver and Montesilver Limited. Mr. Silverwood, who is intending to be here today, but because of the war in our country of Israel, that he was unable to join us, and he sends his regrets. Your Honors, imagine that you are a party to a simple tax court dispute challenging a tax assessment that does not involve any detailed consideration of the tax returns in the case. And suddenly, based on the district court's ruling in this particular case, the government comes back and publishes, through a submission to the court through the electronic filing system and the PACER platform, your private tax returns, your tax return information, your most confidential data throughout the entire world. Now, that is the question, as we see it, as before the court today, whether under 26 U.S.C. 6103, and specifically under what's called the Taxpayer Party Rule of 6103H4A, the IRS can carte blanche, unilaterally publish on the Internet, all of your tax returns, gigabytes of irrelevant, highly confidential, and potentially damaging tax information, without advance notice, or any attempt to either confer or to stipulate, or obtain a protective order or a sealing order, or otherwise to exercise reasonable care before it goes and publishes this material throughout the world on the Internet. We say the answer to that question is no. The plain language of the statute and the intricate structure of 6103, coupled with the civil damages statute, 26 U.S.C. 7431, the legislative history of these statutes, both from the Tax Reform Act of 76 and subsequent amendments, the official publication of the IRS's own chief counsel, and simple common sense, all dictate or indicate that a taxpayer's reasonable expectation of privacy, which is the core issue that prompted Congress in the first place to enact the legislation that is now codified at 6103 and 7431, is violated when the IRS makes a wholesale indiscriminate disclosure of this information to the entire planet. This is a case of first impression, Your Honors, in this court, and perhaps in the entire country. The district court, in an unprecedented and extremely broad interpretation of 6103, but simply flips that statute on its face, and instead of protecting the taxpayers, the ruling that if left stand will open the door to the very sort of abuse that Congress intended to curtail when it enacted 6103 under the Tax Reform Act of 1976. With that, Your Honors, if you have any questions, I'll be glad to answer them. Otherwise, I'll reserve the rest of my time following the government's arguments on rebuttal. I'd like to ask you about the Disclosure and Privacy Law Reference Guide, this Publication 4639, and how you read the last sentence on the introduction to the reader. And the last sentence says, This guide was prepared for reference purposes only. It may not be used or cited as authority for setting or sustaining a liberal position. And reviewing your submissions, you have relied on it. We have indeed, Your Honor, and we think it's a… So how do you read that? Well, I read it the same way that the Supreme Court read the IRS's internal manuals in the Bittner case last term. And that is, it's not binding, it's not legally binding on the court. The Bittner policy or guidance didn't have this language in it. Well, I don't recall that from the court's decision. Well, you looked at the case. Okay. Well, in any case, I think this expresses the IRS's position on this. I think it's instructive. It is not binding. Or even irrespective, our case does not rise or fall on the language of 4639, although I think that's probably the most… You've used it and cited it as authority. And so I'm asking how you read this last sentence that says it may not be used. Well, the IRS has used this. This is probably the single most authoritative assessment by the IRS of the rules in this area. There is nothing else. I agree with you. I believe… …guidance is when it says it cannot be relied on. I think it's self-serving. It's attempting to limit the effect exactly as Your Honor has pointed out of this document. But I don't think they can do that because they published this document. It's available not only to IRS counsel and IRS employees, but the entire world. And we relied on it when we prepared this case. We relied on that publication to understand exactly what the parameters are of the government's obligation of disclosure. I get all that, and you were at the same time told you couldn't do it. Well, I don't think the IRS… The IRS is not going to be the arbiter of whether when it puts a document like this into the public domain and explains in detailed fashion how the disclosure provisions of Section 6103 are to operate and the policies behind that and the history behind that. It's extremely informative, and it's something that the public relied upon, Your Honors, when we undertook to enter this case. We did not expect that the government would take our private tax returns with all of this information, without even talking to us, and just publish it on the Internet willy-nilly without any kind of limitation. This document, as important as it is, is not the ultimate authority on the issue. But what does operate, when you look at the plain language of the statute, this is a statute that creates a presumption of confidentiality. I asked you a very targeted question. Is it your position that you do not feel bound by that? We are not bound by that disclaimer. Absolutely not. With that, unless there are any more questions, Your Honors, I will reserve the rest of my time for after the government argument. Thank you. To get this over with, what is the IRS's position on what that sentence means? Yes, Your Honor, may it please the Court, Jeff Klimas for the United States. This is a document that is prepared that gives high-level guidance that is supposed to be, for reference purposes, that is not supposed to be legally binding on IRS employees. It's supposed to give a broad overview and paint in broad strokes, but ultimately the law is what the statute says and what the binding regulations say, not what is being painted in broad strokes. And typically, these type of guidance documents, whether it's the Internal Revenue Manual or the guide here, they're painted in such a way that they are trying to make sure that the law is not violated without necessarily expanding to the full extent of what the law actually authorizes. So, for example, here where it talks about bankruptcy law disclosures, it's talking about what should be done in the context of a bankruptcy proceeding. It's not saying here is the outer limit of the government's authority under Section H-4 in the context of a bankruptcy proceeding. It's using this precatory directive language, should, rather than using language like must or shall. It's conveying an intent that this is not supposed to be binding, but is counseling in terms of what is a best practice to make sure that we are not going to go anywhere near the line of violating Section 6103. That's what that guidance is intended to do. How authoritative is it? I haven't seen something like this before. I'm just trying to find out this is something that the IRS usually puts in its guidance or what. I think that you're right. There are certain guidance documents that the IRS does not include a disclaimer. So, for example, I think the Internal Revenue Manual typically does not have that kind of disclaimer. I think it's a further weakening of the ability of someone to rely on this as something that's authoritative. That, you know, this court has said, you know, obviously the Internal Revenue Manual does not have the force and effect of law. This is a step removed even from that. And it really isn't, in many of the instances in which Brother Counsel relies on it, isn't even trying to really interpret the statute. It's trying to give high-level guidance about what might be a proceeding pertaining to tax administration or how to approach a bankruptcy case. You know, there are things in this guide, you know, for example, when it says, well, a FOIA case involving a request for taxpayer return information is a proceeding pertaining to tax administration. And then we look at what the case law actually says. If we look at the Safeway or Crow or Greenberger case that plaintiffs cite in their opening brief, the case law says the opposite. So you have to be very cautious when you're looking at a guide like this that is painting in broad strokes. Ultimately, what we should be doing is looking at the statute and the binding regulations and not relying on this other guidance. We would submit that the district court in this case correctly held that the plaintiffs' two prior suits, Silver I and Silver II, were proceedings pertaining to tax administration because, as the district court said in Silver I, all you have to do is really look at the relief as requested, where plaintiffs were seeking to enjoin, enjoin the enforcement against not only themselves but all small businesses, the enforcement of regulations and even statutes that govern the calculation, reporting, and payment of taxes. That is quintessentially something that falls within the definition of tax administration, as is defined in the Internal Revenue Code, the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws, including specifically the assessment collection and enforcement functions, which would be materially impacted if plaintiffs were to have prevailed in those lawsuits. It would have caused IRS revenue agents who are trying to implement their assessment and collection functions to stop what they were doing, put aside the regulations that they've been relying on, and do something else. That falls directly within the purview of this broad definition of tax administration. This court in Gardner said that it is a fairly broad definition, and that is consistent with other courts of appeal as well. And, in fact, that language is broadened by the preceding phrase pertaining to. The other arguments that plaintiffs are advancing involve grafting atextual limitations onto the text of 16-103-H4 that do not appear either in the text or the history or the structure of that provision. The first argument that they make is that there should be a substantive nexus requirement read into Section 16-103-H4, H4A specifically. The court doesn't even have to reach that because this is not an argument that was presented to the district court. But if it does, the plain text does not include anything about a substantive nexus or other similar requirements. When Congress wanted to impose a relevance or similar requirement, it did so specifically in the adjoining provisions. H4B, H4C talk about a directly related to resolution of the issue in the preceding standard. Does the government recognize any limit on this? I mean, sure, the case pertains to tax administration, no question, and you probably win on that basis. But it does seem a little freakish to imagine that the government has a rifle shot, arrow dispute about some very specific tax issue and uses that as the predicate to blast out to the world the tax return of Microsoft or Bill Gates or whoever. Sure, Your Honor. So I want to talk about what we think the statute says and why Congress wrote it in the broad strokes that it did. And I want to talk about the fact that 16-103 is not the only thing that would prevent the kind of conduct that you're concerned about. So when Congress wrote 16-103-H4, it's talking about adversarial proceedings where the taxpayer is present and is represented. And there's a concrete dispute between the taxpayer and the government. It is put up or shut up time where the government has to put its cards on the table. The Congress did not want to hamstring the government's ability and frustrate the government's ability to put its case forward, where it had to sit there and say in advance with crystal clarity, either get your relevance calls right, get your directly related calls right, or you're going to be subject to a separate lawsuit for damages. I can think of an instance in which one of my colleagues in a trial setting was called upon. It was a trust fund recovery penalty where she was trying to establish that certain corporate officers were personally liable for a corporation's unpaid employment taxes. And she had the corporation's tax returns, and she was using those to prove the signature authority of the corporate officers and the fact that they were showing balances going to the issues of responsibility and willfulness. She wasn't focused on the calculation of that liability, just showing that there was one and that someone had the authority to sign. The district judge overseeing that case said, OK, and now, counsel, I'd like you to explain where these numbers come from. How did you calculate the employment taxes that you're now trying to impose on these individuals? And she said, Your Honor, that's not an issue in the case. It's only about willfulness and responsibility. No one is contesting these numbers. And the judge said, if you're asking for a money judgment in my court, I want you to prove up every penny. Please tell me about the calculations, at which point she said, OK, I'm not going to talk about these other parts of the return that I didn't anticipate today. And trying to force a situation where you have civil liability to make the wrong judgment call would put the government in a difficult position, where it's saying, on one hand, we want to make sure we can prove our case. On the other hand, if we go too far and make a bad relevance call, we're going to be facing a subject, a separate suit for damages. And it would really result in a kind of a cottage industry where every time there's a tax controversy matter, the follow on litigation is going to be let's review that all the summary judgment exhibits. Let's review all the trial transcripts. Let's see if we can go line by line and find something that wasn't directly related to the decision that was actually handed down. And then let's bring an unauthorized disclosure suit as a follow on to that litigation. That doesn't mean that there's no recourse if the government were to do something really offensive and just say, hey, this case is about this discrete set of tax issues. We're going to put in anything we can. Any return we can find on this taxpayer may be something that's embarrassing, something else that's in his file that has no relevance. The Supreme Court in Nixon versus Warner Communications said that it always has inherent authority to ensure that its records are not used as a vehicle for an improper purpose. That's similar to what this court said in Hubbard. And a taxpayer who believes that the government has done something for an improper purpose or is offering information that's irrelevant or goes too far has the option of seeking a protective order seal or strike that material. And this is not an academic point. This is, in fact, how Mr. Silver got relief in the Silver One case. He asked for a protective order. He briefed the Hubbard factors. And those documents that the government filed were then subsequently redacted to remove some of the information that he was concerned about. That is the remedy. It's not a 6103 remedy because that's not what Congress has stated in 6103 H4. We have to rewrite the statute to get where other counsel wants to get. But there is a recourse in that situation. And if we were also to assume some kind of a bad case scenario, which is very different than what we have here, where the documents that the government did were the very documents that Mr. Silver and Silver Limited made allegations about, made arguments about, put at issue in the first filing of the case. In both of their complaints, they put these documents at issue. But if we were to assume some kind of a bad case scenario, we would be in a posture where there could also be sanctions either against the government or the government counsel. So this is not a blank check for the government to do anything that it wants. It's just saying that Congress has limited what would be actionable under 7431 and 6103. How much time does Mr. Zell have? Let me make it very clear what we are suggesting here. Judge Katsas, I think you began to put your finger on it. The government is saying that any case that falls within the ambit of the taxpayer party rule gives it a, you heard counsel basically concede this point, gives them a carte blanche to do whatever they wish to do in the case with respect to the private information of the taxpayer. That issue has never been addressed by any court, to my knowledge. And what we're saying is that the IRS is under a duty of care. It has to take... You said that 6103 wouldn't bar a broader disclosure, though other doctrines might. Well, that... Where do you get this limit from 6103? Well, because all of this universe of other issues, other restraints on the IRS is built in necessarily to the statute. Let me give you an example. Sorry that I'm referring back to 4639 again. But 4639 mentions that the disclosure in a proceeding... They have this definition. What is a disclosure in a proceeding which doesn't appear in the statute, which the IRS includes in 4639? It says it includes disclosures in settlement negotiations. Now, think about that for a second. Now the IRS is saying that if you make a disclosure in a confidential settlement negotiation, which we all know is not admissible in court under the federal rules of evidence and under the common law for years standing, that somehow falls within the ambit of 6103 as a disclosure in a judicial proceeding. And I say to you that there is this realm under 6103 H4A1 that says that the IRS is bound by these restrictions. They simply cannot go off and disclose these kinds of documents. They must take care to do so. That's common sense. Otherwise, they did what exactly they did in this case. In contrast to what counsel was saying, we did not raise Hubbard in our Silver I request for a motion to seal. We said that this information was confidential, was not authorized under 6103, and therefore could not be disclosed. And the IRS nevertheless did it. You're over your time. I'm sorry. Thank you, Your Honor. If I may just make one concluding remark, with your permission. No one disputes the importance of protecting the confidentiality of tax returns and return information. No one disputes the profound implications of privacy brought upon by technology, specifically the ECF system and the PACER. In this case, the first impression we ask the court to properly construe Section 61H4A to impose upon the IRS the common sense obligation to take necessary precautions before filing confidential tax information electronically and disseminating it to the entire planet. We ask the court to reverse the judgment of the district court and remand the case for further proceedings on the merits. Thank you, Your Honor.
judges: Henderson, Katsas, Randolph